ROBERT M. DOWD #070685
MICHAEL R. JOHNSON #237767
ANDREW J. BROWNSON #287284
GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
111 E. Seventh Street
Hanford, CA 93230
Telephone: (559) 584-6656
Facsimile: (800) 948-0290
E-mail: dowd@griswoldlasalle.com; johnson@griswoldlasalle.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

INTERNATIONAL LINING TECHNOLOGY, a Nevada Corporation,

        Plaintiff,

v.

WOOD BROS, INC., a California Corporation; MERCHANTS BONDING COMPANY (a.k.a. MERCHANTS NATIONAL BONDING, INC.), an Iowa Corporation; AMERICAN CONRACTORS INDEMNITY COMPANY, a California Corporation; ACCREDITED SURETY AND CASUALTY COMPANY, INC., a Florida Corporation,

        Defendants.

Case No:  1:18-CV-01418-LJO-SKO

**ANSWER AND COUNTERCLAIM AGAINST PLAINTIFF, INTERNATIONAL LINING TECHNOLOGY**

**DEMAND FOR JURY TRIAL**

    Defendant, WOOD BROS, INC, a California Corporation ("WOOD"), MERCHANTS BONDING COMPANY (a.k.a. MERCHANTS NATIONAL BONDING, INC.), an Iowa Corporation ("MERCHANTS"), AMERICAN CONTRACTORS INDEMNITY COMPANY, a California Corporation ("AMERICAN"), and ACCREDITED SURETY AND CASAULTY COMPANY, INC. ("ACCREDITED") (collectively "These Answering Defendants"), for themselves and no others, respond to the Complaint in the above-entitled action, as follows:

///

1

GRISWOLD, LaSALLE, COBB, DOWD & GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

## INTRODUCTION

1.      In answer to the allegations contained in Paragraph 1 of the Complaint, These Answering Defendants admit all allegations therein.

## JURISDICTION

2.      In answer to the allegations contained in Paragraph 2 of the Complaint, These Answering Defendants admit all allegations therein.

3.      In answer to the allegations contained in Paragraph 3 of the Complaint, These Answering Defendants admit all allegations therein.

## PARTIES

4.      In answer to the allegations contained in Paragraph 4 of the Complaint, These Answering Defendants lack sufficient information and belief to enable them to answer the allegations contained therein and, basing such denial thereon, deny each and every allegation contained therein, and each and every part thereof, both generally and specifically.

5.      In answer to the allegations contained in Paragraph 5 of the Complaint, These Answering Defendants admit all allegations therein.

6.      In answer to the allegations contained in Paragraph 6 of the Complaint, These Answering Defendants admit all allegations therein.

7.      In answer to the allegations contained in Paragraph 7 of the Complaint, These Answering Defendants lack sufficient information and belief to enable them to answer the allegations contained therein and, basing such denial thereon, deny each and every allegation contained therein, and each and every part thereof, both generally and specifically.

8.      In answer to the allegations contained in Paragraph 8 of the Complaint, These Answering Defendants lack sufficient information and belief to enable them to answer the allegations contained therein and, basing such denial thereon, deny each and every allegation contained therein, and each and every part thereof, both generally and specifically.

9.      In answer to the allegations contained in Paragraph 9 of the Complaint, These Answering Defendants lack sufficient information and belief to enable them to answer the allegations contained therein and, basing such denial thereon, deny each and every allegation

GRISWOLD, LaSALLE, COBB, DOWD & GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

1   contained therein, and each and every part thereof, both generally and specifically.

### FIRST CAUSE OF ACTION

**(Breach of Contract)**

**(Against WOOD)**

10.     In answer to the allegations contained in Paragraph 10 of the Complaint, WOOD realleges each and all of its answers set forth in Paragraphs 1 through 9, inclusive set forth herein.

11.     In answer to the allegations contained in Paragraph 11 of the Complaint, WOOD admits all allegations therein.

12.     In answer to the allegations contained in Paragraph 12 of the Complaint, WOOD admits all allegations therein.

13.     In answer to the allegations contained in Paragraph 13 of the Complaint, WOOD Admits materials were delivered untimely, but denies all other allegations.

14.     In answer to the allegations contained in Paragraph 14 of the Complaint, WOOD admits that "Defendant Wood Bros has been fully compensated from the owner, Fresno County, for the work performed by Plaintiff under the Subcontract (and additional Change Orders)," and except as expressly admitted herein, deny each, every and all of the remaining allegations contained therein.

15.     In answer to the allegations contained in Paragraph 15 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

16.     In answer to the allegations contained in Paragraph 16 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

17.     In answer to the allegations contained in Paragraph 17 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

18.     In answer to the allegations contained in Paragraph 18 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

generally and specifically.

## SECOND CAUSE OF ACTION

### (For Services Rendered)

### (Against WOOD)

19.     In answer to the allegations contained in Paragraph 19 of the Complaint, WOOD reallages each and all of their answers set forth in Paragraphs 1 through 18, inclusive set forth herein.

20.     In answer to the allegations contained in Paragraph 20 of the Complaint, WOOD Denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

21.     In answer to the allegations contained in Paragraph 21 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

## THIRD CAUSE OF ACTION

### (For Account Stated)

### (Against WOOD)

22.     In answer to the allegations contained in Paragraph 22 of the Complaint, WOOD reallages each and all of their answers set forth in Paragraphs 1 through 21, inclusive set forth herein.

23.     In answer to the allegations contained in Paragraph 23 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

24.     In answer to the allegations contained in Paragraph 24 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

## FOURTH CAUSE OF ACTION

### (Open Book Account)

### (Against WOOD)

4

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

Answer to Complaint and Counterclaim
*International Lining Technology v. Wood Bros, Inc., et al.*
United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO

25.    In answer to the allegations contained in Paragraph 25 of the Complaint, WOOD realleges each and all of their answers set forth in Paragraphs 1 through 24, inclusive set forth herein.

26.    In answer to the allegations contained in Paragraph 26 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

27.    In answer to the allegations contained in Paragraph 27 of the Complaint, WOOD denies each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

## FIFTH CAUSE OF ACTION

### (On Contractor's Payment Bond)

### (Against WOOD and MERCHANT)

28.    In answer to the allegations contained in Paragraph 28 of the Complaint, These Answering Defendants reallege each and all of their answers set forth in Paragraphs 1 through 27, inclusive set forth herein.

29.    In answer to the allegations contained in Paragraph 29 of the Complaint, These Answering Defendants admit all allegations therein.

30.    In answer to the allegations contained in Paragraph 30 of the Complaint, These Answering Defendants admit all allegations therein.

31.    In answer to the allegations contained in Paragraph 31 of the Complaint, These Answering Defendants admit all allegations therein.

32.    In answer to the allegations contained in Paragraph 32 of the Complaint, These Answering Defendants deny each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

33.    In answer to the allegations contained in Paragraph 33 of the Complaint, These Answering Defendants deny each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

///

5

GRISWOLD, LaSALLE, COBB, DOWD & GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

**SIXTH CAUSE OF ACTION**

**(Recovery on Contractor's License Bond)**

**(Against WOOD and AMERICAN)**

34.     In answer to the allegations contained in Paragraph 34 of the Complaint, WOOD and AMERICAN reallege each and all of their answers set forth in Paragraphs 1 through 33, inclusive set forth herein.

35.     In answer to the allegations contained in Paragraph 35 of the Complaint, WOOD and AMERICAN admit all allegations therein.

36.     In answer to the allegations contained in Paragraph 36 of the Complaint, WOOD and AMERICAN deny each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

37.     In answer to the allegations contained in Paragraph 37 of the Complaint, WOOD and AMERICAN admit all allegations therein.

38.     In answer to the allegations contained in Paragraph 38 of the Complaint, WOOD and AMERICAN deny each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

39.     In answer to the allegations contained in Paragraph 39 of the Complaint, WOOD and AMERICAN deny each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

**SEVENTH CAUSE OF ACTION**

**(Recovery on Contractor's License Bond)**

**(Against WOOD and ACCREDITED)**

40.     In answer to the allegations contained in Paragraph 40 of the Complaint WOOD and ACCREDITED reallege each and all of their answers set forth in Paragraphs 1 through 39, inclusive set forth herein.

41.     In answer to the allegations contained in Paragraph 41 of the Complaint, WOOD and ACCREDITED admit all allegations therein.

42.     In answer to the allegations contained in Paragraph 42 of the Complaint, WOOD

6

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

and ACCREDITED deny each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

43.     In answer to the allegations contained in Paragraph 43 of the Complaint, WOOD and ACCREDITED admit all allegations therein.

44.     In answer to the allegations contained in Paragraph 44 of the Complaint, WOOD and ACCREDITED deny each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

45.     In answer to the allegations contained in Paragraph 45 of the Complaint, WOOD and ACCREDITED deny each, every and all allegations contained therein and each and every part thereof, both generally and specifically.

<u>**AFFIRMATIVE DEFENSES**</u>

**FIRST AFFIRMATIVE DEFENSE**

1.     The allegations of the Complaint, and each cause of action therein, do not state facts sufficient to constitute a cause of action against These Answering Defendants.

**SECOND AFFIRMATIVE DEFENSE**

2.     A contractor's bond is not a cash, performance or labor and material bond, nor is the bond any way an insurance policy. Any recovery against a contractor's bond is conditioned on a proven violation of the applicable provisions of the California Business & Professions Code sections. Furthermore, such recovery is limited to the penal sum of such a bond.

**THIRD AFFIRMATIVE DEFENSE**

3.      A contractor's bond only covers those acts of the bond principal/licensee that are within the scope of the licensed business.

**FOURTH AFFIRMATIVE DEFENSE**

4.     A contractor's bond only covers those acts which occur during the period of time that the contractor's bond was effective.

**FIFTH AFFIRMATIVE DEFENSE**

5.     A contractor's bond, pursuant to its terms, is only effective and covers only those acts that occur while the contractor's license for which it was issued is active.

7

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

**SIXTH AFFIRMATIVE DEFENSE**

6.     The liability of MERCHANTS, AMERICAN and ACCREDITED, if any, is limited in aggregate to the penal sum of any contractor's bond they may have issued individually, irrespective of the number of claims brought against said bond. Any such liability is reducible from the maximum penal sum by payments made in good faith to any other claimants who have, or will bring, claims or lawsuits against any such bond issued by MERCHANTS, AMERICAN or ACCREDITED.

**SEVENTH AFFIRMATIVE DEFENSE**

7.     MERCHANTS, AMERICAN and ACCREDITED are informed and believe, and thereon allege, that WOOD has or may have defenses to the claims of Plaintiff, INTERNATIONAL LINING TECHNOLOGY ("ILT") not presently known to MERCHANTS, AMERICAN and ACCREDITED, and which inure to the benefit of MERCHANTS, AMERICAN and ACCREDITED, and MERCHANTS, AMERICAN and ACCREDITED pray leave to amend this Answer to assert such defenses when the same shall have been ascertained.

**EIGHTH AFFIRMATIVE DEFENSE**

8.     Any act of the Plaintiff ILT constituting an alteration of its original relationship with WOOD without notice to MERCHANTS, AMERICAN and ACCREDITED would serve to exonerate MERCHANTS, AMERICAN and ACCREDITED under California Civil Code section 2819.

**NINTH AFFIRMATIVE DEFENSE**

9.     Plaintiff, ILT's Complaint, and each cause of action thereof, is barred by the applicable statute of limitations, California Code of Civil Procedure sections 335 through 349.9, including, but not limited to, California Business and Professions Code section 7071.11, California Code of Civil Procedure sections 337.1, 337.15, 337(1), 338, 339 and 340, et seq.

**TENTH AFFIRMATIVE DEFENSE**

10.     The liability of AMERICAN and ACCREDITED, if any, on the contractor's bond issued to WOOD is secondary to the liability of the performance bond or payment bond issued by another surety to WOOD.

8

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

1  **ELEVENTH AFFIRMATIVE DEFENSE**

2    11. These Answering Defendants are entitled to an offset against Plaintiff's alleged

3  damages as a result of Plaintiff's delay in procuring or providing materials necessary for These

4  Answering Defendants to timely complete the Fresno Contract.

5  **TWELFTH AFFIRMATIVE DEFENSE**

6    12. Plaintiff failed to perform certain conditions precedent to payment, including the

7  timely delivery and procurement of certain materials necessary to complete the Fresno Contract.

8  **THIRTEENTH AFFIRMATIVE DEFENSE**

9    13. Plaintiff is barred from recovery by reason of its failure to mitigate damages.

10  **FOURTEENTH AFFIRMATIVE DEFENSE**

11    14. Any damages allegedly sustained by Plaintiff, ILT were not caused by any

12  conduct of These Answering Defendants.

13  **FIFTEENTH AFFIRMATIVE DEFENSE**

14    15. Plaintiff is barred from recovery by reason of lack of timely and proper notice.

15  **PRAYER FOR RELIEF**

16    WHEREFORE, having stated in its answer affirmative defenses, These Answering

17  Defendants pray for judgment on all claims that:

18    1. The Complaint be dismissed;

19    2. That Plaintiff take nothing by way of its Complaint;

20    3. These Answering Defendants recover attorneys' fees and costs, as applicable;

21    4. For such other and further relief as the Court may deem just and proper.

22

23

24

25

26

27

28

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

## WOOD'S COUNTERCLAIM AGAINST PLAINTIFF, ILT

Defendant and Counterclaim Plaintiff asserts the following Counterclaim against Plaintiff and Counterclaim Defendant, ILT, and alleges upon knowledge as to itself and its own acts and upon information and belief as to all other matters as follows:

### PARTIES

1.      WOOD is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California, doing business as a general construction contractor holding California's contractor's license number 558257.

2.      WOOD is informed and believes, and on that basis alleges, that Plaintiff, ILT is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Nevada, with its primary headquarters located in Reno, Nevada, duly doing business in and licensed to conduct business as a construction subcontractor in the State of California and holds a California contractor's license number 811377.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1367(a).

4.      This Court has personal jurisdiction over ILT on the basis of, inter alia, its contacts with California.

5.      Venue is proper under 28 U.S.C. section 1391(b)(2).

### BACKGROUND

6.      WOOD acted as the prime contractor and performed a public works project in the County of Fresno known as the American Avenue Disposal Site, Phase II Modules 7 & 8 Excavation and Liner System Construction (the "Project").

7.      The Project was and is owned by the County of Fresno, Department of Public Works and Planning ("OWNER"). WOOD and OWNER entered into Contract No. 16-22-SW (the "Prime Contract"). A true and correct copy of this Prime Contract is attached hereto as Exhibit A and made a part hereof.

8.      ILT entered into a subcontract with WOOD (the "Subcontract") on or about April 25, 2017 for a portion of the Project work involving the installation of geomembrane lining

10

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

material, including all labor necessary to complete the scope. A true and correct copy of this Subcontract is attached hereto as Exhibit B and made a part hereof.

9.   On or about April 5, 2018, OWNER demanded WOOD pay damages for delays on the Project caused by ILT. WOOD and OWNER settled this demand on August 7, 2018 for $100,000.00.

10.   On or about August 31, 2018, WOOD demanded the same sum from ILT. ILT refused to pay the demanded sum.

## **FIRST CAUSE OF ACTION**

### **(Breach of Contract)**

### **(Against ILT)**

11.   WOOD incorporates by reference paragraphs 1 through 10 of its Counterclaim as though fully set forth herein.

12.   ILT contracted with WOOD in the Subcontract, Section 15 of Exhibit B, to provide all materials necessary to perform the Subcontract according to the plans and specifications issued.

13.   Part of the plans and specifications on the Project included the timely procurement and delivery of materials related to ILT's subcontracted work on the Project. Moreover, ILT is bound in Section 3 of Exhibit B by the Prime Contract and any contract documents incorporated therein.

14.   Time is expressly made of the essence of the Subcontract in Section 4 of Exhibit B.

15.   In or about February 2018, ILT failed to procure or deliver geomembrane materials necessary to continue work on the Project.

16.   ILT has breached the Subcontract by failing to procure or deliver geomembrane materials necessary to continue work on the Project.

17.   Based on ILT's delay, WOOD withheld payment to ILT.

18.   WOOD has fully performed, or its performance has been excused, all terms and conditions to be performed under the terms of the Subcontract.

11

GRISWOLD, LaSALLE, COBB, DOWD & GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

19.    The Subcontract provides that the prevailing party in any dispute or proceeding between the parties shall be entitled to recover its attorneys' fees.

20.    As a proximate result of ILT's delay, OWNER charged WOOD with delay damages. WOOD and OWNER resolved these delay damages for $100,000.00.

21.    As a proximate result of ILT's delay, WOOD now seeks recovery of the $100,000.00 paid to owner to settle the delay claim, together with costs, prejudgment interest and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

### (Against ILT)

22.    WOOD incorporates by reference paragraphs 1 through 21 of its Counterclaim as though fully set forth herein.

23.    ILT unfairly interfered with WOOD's right to receive benefits under the Subcontract, namely to procure and deliver certain materials within the agreed time period of February 27, 2018 to April 4, 2018 and ILT failed to act in good faith to properly procure and deliver the required materials.

24.    As a proximate result of ILT's conduct, WOOD now seeks recovery of the $100,000.00 paid to owner to settle the delay claim, together with costs and prejudgment interest.

///
///
///
///
///
///
///
///
///
///

12

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

1

## **PRAYER FOR RELIEF**

2    WHEREFORE, Defendant and Counterclaim Plaintiff, WOOD prays for judgment on its

3  Counterclaim as follows:

4    1.   For the sum of $100,000.00;

5    2.   For prejudgment interest in the maximum permitted by law;

6    3.   For costs of the suit herein incurred;

7    4.   For attorneys' fees;

8    5.   For such other and further relief as the Court may deem just and proper.

9

10  DATE: November 26, 2018                    GRISWOLD, LaSALLE, COBB,
                                              DOWD & GIN, L.L.P.

11

12                                        By:  ___/s/ Michael R. Johnson___

13                                              MICHAEL R. JOHNSON,
                                              Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

13

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

1

**DEMAND FOR JURY TRIAL**

2

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants, WOOD BROS,

3  INC, a California Corporation, MERCHANTS BONDING COMPANY (a.k.a. MERCHANTS

4  NATIONAL BONDING, INC.), an Iowa Corporation, AMERICAN CONTRACTORS

5  INDEMNITY COMPANY, a California Corporation, and ACCREDITED SURETY AND

6  CASAULTY COMPANY, INC., hereby demand a trial by jury in this action on all triable issues.

7

8  Dated:  November 26, 2018                              GRISWOLD, LaSALLE, COBB,
                                                                              DOWD & GIN, L.L.P.

9

10                                                                    By:   /s/ Michael R. Johnson

11                                                                            MICHAEL R. JOHNSON,
                                                                              Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2018, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Howard D. Hall          hdhall@hallgriffin.com

Jered T. Ede            jede@hallgriffin.com

And I hereby certify that I will mail the document via U.S. mail to the following non-filing user:

James M. Walsh, Esq.
Walsh, Baker & Rosevear
9468 Double R Blvd., Suite A
Reno, NV 89521

By: /s/ Katie Askins
KATIE ASKINS

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

**Answer to Complaint and Counterclaim**
*International Lining Technology v. Wood Bros, Inc., et al.*
**United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

Answer to Complaint and Counterclaim
*International Lining Technology v. Wood Bros, Inc., et al.*
United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO

**AMERICAN AVENUE DISPOSAL SITE PHASE III CONTRACT NO. 16-22-SW
MODULES 7 & 8 EXCAVATION AND LINER SYSTEM CONSTRUCTION**

### A G R E E M E N T

THIS AGREEMENT made at Fresno, in Fresno County, California, by and between <u>Wood Bros Inc.</u> hereinafter called the Contractor, and the <u>County of Fresno</u> hereinafter called the Owner.

WITNESSETH: That the Contractor and the Owner, for the consideration hereinafter named, agree as follows:

**ARTICLE I.** The Contractor agrees to furnish all labor and materials, including tools, implements, and appliances required, but excluding such materials as are mentioned in the specifications to be furnished by the Owner, and to perform all the work in a good and workmanlike manner, free from any and all liens and claims of mechanics, materialmen, teamsters, subcontractors, artisans, machinists, and laborers required for:

**AMERICAN AVENUE DISPOSAL SITE PHASE III
MODULES 7 & 8 EXCAVATION AND LINER SYSTEM CONSTRUCTION**

**CONTRACT NO. 16-22-SW**

All in strict compliance with the plans, drawings and specifications therefor prepared by the Owner, and other contract documents relating thereto.

**ARTICLE II.** The Contractor and the Owner agree that the Notice to Bidders and Special Provisions, the Wage Scale (Prevailing Wages), the, the Plans and Drawings, Addenda and Bulletins thereto, and the Proposal (the Bid Book) hereto attached, together with this Agreement, form the contract, and they are as fully a part of the contract as if hereto attached or herein repeated.

All portions of the Standard Specifications of the State of California, Department of Transportation, dated 2010, which are not in conflict with this contract shall be deemed a part of the specifications as though fully therein set forth; provided, however, that revisions to the said Standard Specifications shall apply only to the extent, if any, included in the Project Details of these specifications or as otherwise incorporated directly herein. No part of said specifications which is in conflict with any portion of this agreement, or which is not actually descriptive of the work to be done thereunder, or of the manner in which said work is to be executed, shall be considered as any part of this agreement, but shall be utterly null and void.

**ARTICLE III.** The Owner agrees to pay the Contractor in current funds for the performance of the contract the sum of **FIVE MILLION SIX HUNDRED EIGHTY-SIX THOUSAND FIVE HUNDRED FORTY DOLLARS AND 00/100 ($5,686,540.00)** it being understood that said price is based upon the estimated quantities of materials to be used as set forth in the Proposal, except where provisions are made in the contract documents whereby the estimated quantities shall constitute the final quantity; that upon completion of the project the final contract prices shall be revised by change order, if necessary, to reflect the true quantities used at the stated unit price thereof as contained in the Contractor's Proposal hereto attached. Payments on account thereof will be made as set forth in the special provisions.

**ARTICLE IV.** If the Contractor should be adjudged a bankrupt, or if he should make a general assignment for the benefit of his creditors, or if a receiver should be appointed on account of his insolvency, or if he or any of his subcontractors should persistently violate any of the provisions of the contract, or if he should persistently or repeatedly refuse or should fail,

**AMERICAN AVENUE DISPOSAL SITE PHASE III CONTRACT NO. 16-22-SW
MODULES 7 & 8 EXCAVATION AND LINER SYSTEM CONSTRUCTION**

except in cases for which extension of time is provided, to supply enough properly skilled workmen or proper materials, or if he should fail to make prompt payment to subcontractors or for material or labor, or persistently disregard laws, ordinances or the instructions of the Engineer, then the Owner may, upon certificate of the Engineer when sufficient cause exists to justify such action, serve written notice upon the Contractor and his surety of its intention to terminate the contract, and unless within five days after the serving of such notice, such violations shall cease and satisfactory arrangements for correction thereof be made, the contract shall, upon the expiration of said five days, cease and terminate.

In the event of any such termination, the Owner shall immediately serve written notice thereof upon the surety and the Contractor, and the surety shall have the right to take over and perform the contract, provided, however, that if the surety within ten (10) days after the serving upon it of notice of termination does not give the Owner written notice of its intention to take over and perform the contract or does not commence performance thereof within the ten (10) days stated above from the date of the serving of such notice, the Owner may take over the work and prosecute the same to completion by contract or by any other method it may deem advisable, for the account and at the expense of the Contractor, and the Contractor and his surety shall be liable to the Owner for any excess cost occasioned the Owner thereby, and in such event the Owner may without liability for so doing, take possession of and utilize in completing the work such materials, appliances, plant and other property belonging to the Contractor as may be on the site of the work and necessary therefor.  In such case the Contractor shall not be entitled to receive any further payment until the work is finished.  If the unpaid balance of the contract price shall exceed the expenses of finishing the work, including compensation for additional managerial and administrative services, such excess shall be paid to the Contractor.  If such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner.  The expense incurred by the Owner, as herein provided and damage incurred through the Contractor's default, shall be certified by the Engineer.

**ARTICLE V.**  With respect to any work required to be done under this contract, the Contractor will indemnify and hold harmless the COUNTY OF FRESNO, CONSULTANTS and all other participating public agencies, whether or not said agencies are named herein, who have jurisdiction within the areas in which the work is to be performed, and all officers and employees of the Owner, the County, the State, the United States and said other participating agencies, from any and all costs and expenses, attorney fees and court costs, damages, liabilities, claims and losses occurring or resulting to COUNTY in connection with the performance, or failure to perform, by CONTRACTOR, its officers, agents or employees under this Agreement, and from any and all costs and expenses, attorney fees and court costs, damages, liabilities, claims and losses occurring or resulting to any person, firm or corporation who may be injured or damaged by the performance, or failure to perform, of CONTRACTOR, its officers, agents or employees under this Agreement.   In addition, CONTRACTOR agrees to indemnify COUNTY for Federal, State of California and/or local audit exceptions resulting from non-compliance herein on the part of CONTRACTOR.

CONTRACTOR agrees to indemnify, save, hold harmless, and at COUNTY'S request, defend the COUNTY, its officers, agents, and employees from any and all costs and expenses, damages, liabilities, claims, and losses occurring or resulting to COUNTY in connection with the performance, or failure to perform, by CONTRACTOR, its officers, agents, or employees under this Agreement, and from any and all costs and expenses, damages, liabilities, claims, and losses occurring or resulting to any person, firm, or corporation who may be injured or damaged by the performance, or failure to perform, of CONTRACTOR, its officers, agents, or employees under this Agreement.

**Contract Number 16-22-SW**          **Agreement – 2**

**AMERICAN AVENUE DISPOSAL SITE PHASE III CONTRACT NO. 16-22-SW**
**MODULES 7 & 8 EXCAVATION AND LINER SYSTEM CONSTRUCTION**

In the event CONTRACTOR fails to keep in effect at all times insurance coverage as herein provided, the COUNTY may, in addition to other remedies it may have, suspend or terminate this Agreement upon the occurrence of such event.

All policies shall be with admitted insurers licensed to do business in the State of California. Insurance purchased shall be purchased from companies possessing a current A.M. Best, Inc. rating of A and FSC VIII or better.

The Certificate of Insurance shall be issued in duplicate, to the COUNTY OF FRESNO and all other participating agencies, whether or not said agencies are named herein, who contribute to the cost of the work or have jurisdiction over areas in which the work is to be performed and all officers and employees of said agencies while acting within the course and scope of their duties and responsibilities.

In the event CONTRACTOR fails to keep in effect at all times insurance coverage as herein provided, the COUNTY may, in addition to other remedies it may have, suspend or terminate this Agreement upon the occurrence of such event.

All policies shall be with admitted insurers licensed to do business in the State of California. Insurance purchased shall be purchased from companies possessing a current A.M Best Company rating of A FSC VII or better.

Without limiting the COUNTY'S right to obtain indemnification from CONTRACTOR or any third parties, CONTRACTOR, at its sole expense, shall maintain in full force and effect, the following insurance policies or a program of self-insurance, including but not limited to, an insurance pooling arrangement or Joint Powers Agreement (JPA) throughout the term of the Agreement:

A.  Commercial General Liability

Commercial General Liability Insurance with limits not less than those shown in the following table:

### Liability Insurance Requirements

| Total bid | For each occurrence[a] | Aggregate for products/completed operation | General aggregate[b] | Umbrella or excess liability[c] |
|---|---|---|---|---|
| ≤ $1,000,000 | $1,000,000 | $2,000,000 | $2,000,000 | $5,000,000 |
| > $1,000,000 ≤ $10,000,000 | $1,000,000 | $2,000,000 | $2,000,000 | $10,000,000 |
| > $10,000,000 ≤ $25,000,000 | $2,000,000 | $2,000,000 | $4,000,000 | $15,000,000 |
| > $25,000,000 | $2,000,000 | $2,000,000 | $4,000,000 | $25,000,000 |

[a]*Combined single limit for bodily injury and property damage.*
[b]*This limit must apply separately to your work under this Contract.*
[c]*The umbrella or excess policy must contain a clause stating that it takes effect (drops down) in the event the primary limits are impaired or exhausted.*

**Contract Number 16-22-SW**          **Agreement – 3**

**AMERICAN AVENUE DISPOSAL SITE PHASE III CONTRACT NO. 16-22-SW**
**MODULES 7 & 8 EXCAVATION AND LINER SYSTEM CONSTRUCTION**

This policy shall be issued on a per occurrence basis. COUNTY may require specific coverages including completed operations, products liability, contractual liability, Explosion-Collapse-Underground, fire legal liability, or any other liability insurance deemed necessary because of the of the nature of this contract.

Such Commercial General Liability insurance shall name the County of Fresno, its officers, agents, and employees, individually and collectively, as additional insured, but only insofar as the operations under this Agreement are concerned. Such coverage for additional insured shall apply as primary insurance and any other insurance, or self-insurance, maintained by COUNTY, its officers, agents and employees shall be excess only and not contributing with insurance provided under CONTRACTOR's policies herein. This insurance shall not be cancelled or changed without a minimum of thirty (30) days advance written notice given to COUNTY. CONTRACTOR shall obtain endorsements to the Commercial General Liability insurance policy naming COUNTY as an additional insured and providing for a thirty (30) day prior written notice of cancellation or change in terms or coverage.

Within eight (8) days from date CONTRACTOR executes this Agreement, CONTRACTOR shall provide certificates of insurance and endorsement as stated above for all of the foregoing policies, as required herein, to the County of Fresno, stating that such insurance coverages have been obtained and are in full force; that the County of Fresno, its officers, agents and employees will not be responsible for an premiums on the policies; that such Commercial General Liability insurance names the County of Fresno, its officers, agents, and employees, individually and collectively, as additional insured, but only insofar as the operations under this Agreement are concerned; that such coverage for additional insured shall apply as primary insurance an any other insurance, or self- insurance shall not be cancelled or changed without a minimum of thirty (30) days advance, written notice given to COUNTY.

CONTRACTOR shall obtain endorsements to the Commercial General Liability insurance naming the County of Fresno, its officers, agents, and employees, individually and collectively, as additional insured, but only insofar as the operations under this Agreement are concerned. Such coverage for additional insured shall apply as primary insurance and any other insurance, or self-insurance, maintained by COUNTY, its officers, agents, and employees shall be excess only and not contributing with insurance provided under CONTRACTOR'S policies herein. This insurance shall not be cancelled or changed without a minimum or thirty (30) days advance written notice given to COUNTY.

B. Automobile Liability

Comprehensive Automobile Liability Insurance with limits of not less than One Million Dollars ($1,000,000) per accident for bodily injury and property damage. Coverage should include owned and non-owned vehicles used in connection with this Agreement and all applicable endorsements.

C. Professional Liability

If CONTRACTOR is a licensed professional or employs professional staff, (e.g., Architect, Engineer, Surveyor, etc.) in providing services, Professional Liability Insurance with limits of not less than One Million Dollars ($1,000,000.00) per occurrence, Three Million Dollars ($3,000,000.00) annual aggregate with a provision for 3 year tail coverage.

**AMERICAN AVENUE DISPOSAL SITE PHASE III CONTRACT NO. 16-22-SW**
**MODULES 7 & 8 EXCAVATION AND LINER SYSTEM CONSTRUCTION**

D. Worker's Compensation

A policy of Worker's Compensation insurance as may be required by the California Labor Code.
**ARTICLE VI.**   Contractor represents that he has secured the payment of Worker's Compensation in compliance with the provisions of the Labor Code of the State of California and during the performance of the work contemplated herein will continue so to comply with said provisions of said Code.  Contractor shall supply the Owner with certificates of insurance, in duplicate, evidencing that Worker's Compensation Insurance is in effect and providing that the Owner will receive ten days notice of cancellation.  If Contractor self-insures Worker's Compensation, Certificate of Consent to Self-insure should be provided the Owner.

**ARTICLE VII.**  The Contractor shall forthwith furnish in duplicate, a faithful performance bond in an amount equal to 100% of the contract price and a payment bond in an amount equal to 100% of the contract price, both bonds to be written by a surety company acceptable to the Owner and in the form prescribed by law.

The payment bond shall contain provisions such that if the Contractor or his subcontractors shall fail to pay (a) amounts due under the Unemployment Insurance Code with respect to work performed under the contract, or (b) any amounts required to be deducted, withheld and paid over to the Employment Development Department and to the Franchise Tax Board from the wages of the employees of the Contractor and subcontractors pursuant to Section 13020 of the Unemployment Insurance Code with respect to such work and labor, then the surety will pay these amounts.  In case suit is brought upon the payment bond, the surety will pay a reasonable attorney's fee to be fixed by the court.

**ARTICLE VIII.**  Governing Law – Venue for any action arising out of or relating to this Agreement shall be in Fresno County, California. This Agreement shall be governed by the laws of the State of California

This Contract, **16-22-SW.** was awarded by the Board of Supervisors on <u>April 25, 2017</u>.  It has been reviewed by the Department of Public Works and Planning and is in proper order for signature of the Chairman of the Board of Supervisors.

_____
Director of the Department of Public Works and Planning

IN WITNESS WHEREOF, they have executed this Agreement this __24th__ day of

_____, 2017

_COUNTY OF FRESNO_                                        Wood Bros Inc
(OWNER)                                                              (CONTRACTOR)

                                                                          77-0201050
                                                                    (Taxpayer Federal I.D. No.)

By _____                          By _____
Chairman, Board of Supervisors                         Title   Donald T. Wood
                                                                              Secretary

**Contract Number 16-22-SW**          **Agreement – 5**

ATTEST:
BERNICE E. SEIDEL, Clerk
Board of Supervisors
By _____
                              Deputy

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, LLP
111 E. SEVENTH STREET
HANFORD, CA 93230

Answer to Complaint and Counterclaim
*International Lining Technology v. Wood Bros, Inc., et al.*
United States District Court Eastern District Case No. 1:18-CV-01418-LJO-SKO

SHORT FORM STANDARD SUBCONTRACT

This Agreement is made this 25th   day of **April 2017**, between Wood Bros., Inc (Contractor) and **International Lining Technology** (Subcontractor).  The work described in Section 1 below shall be performed in accordance with the prime contract between Wood Bros., Inc. (Contractor) and **The County of Fresno, Department of Public Works and Planning**  (Owner) and in accordance with all plans, specifications and other contract documents attached to or incorporated into the prime contract for the project known as **American Avenue Disposal Site, Phase III Module 7 & 8 Excavation and Liner System Construction, Contract No. 16-22-SW.**

SECTION 1.   SCOPE.   Subcontractor agrees to furnish all labor, materials, equipment and other facilities required to complete the following work:
      See Exhibit A - ITL Proposal Dated March 9, 2017

SECTION 2.  PRICE.  Contractor agrees to pay Subcontractor for the strict performance of his work, the sum of: Two million, one hundred fifteen thousand, three hundred twenty dollars and no cents ($2,115,320.00) subject to adjustments for changes in the work as may be directed in writing by Contractor.  Payments shall be made in monthly progress payments of ninety-five percent (95%) of labor and material which have been incorporated into the work of improvement progress payments to Subcontractor shall be made only with sums received by Contractor from Owner for work performed by Subcontractor as reflected in Contractor's applications for payment.  Final payment of the balance owed to Subcontractor shall be due fourteen days after receipt by Contractor of final payment from Owner for Subcontractor's work.  Subcontractor agrees to furnish, if and when required Contractor, payroll affidavits, receipts, vouchers, releases of claims for labor, material and from his subcontractors, in form satisfactory to Contractor, prior to receipt of any payment.  Contractor may, at its option, make any payment or portion thereof by joint check payable to Subcontractor and any of its subcontractors, suppliers and/or material.

SECTION 3.  ENTIRE AGREEMENT.  This Agreement represents the entire agreement between Contractor and the Subcontractor and supersedes any prior written or oral representations.  Subcontractor and his subcontractors are bound by the prime contract and any contract documents incorporated therein insofar as they relate in any way, directly or indirectly, to the work covered by this Agreement.

SECTION 4.  TIME.  Time is of the essence of this Agreement; Subcontractor shall provide Contractor with scheduling information in a form acceptable to Contractor and shall conform to MUTUALLY AGREED UPON Contractor's progress schedules, including any changes made by contractor AND AGREED UPON BY SUBCONTRACTOR in the scheduling of work.  Subcontractor shall coordinate its work with that of all other contractors, subcontractors and suppliers so as not to delay or damage their performance.

SECTION 5.  DELAY.  In the event that Subcontractor's work is delayed for any reason, including acts of the Contractor, Subcontractor's sole remedy shall be an extension of time equal to the period of delay, provided Subcontractor has given Contractor written notice of the commencement of delay within 48 hours of its occurrence. PROPOSAL DATED MARCH 9, 2017 SHALL PROVIDE DELAY PROVISIONS In the event that Contractor, in its sole discretion, should seek compensation from the Owner as a result of any delay, Subcontractor shall be entitled to an equitable portion of any amount recovered by Contractor, minus an aliquot share of the cost of pursuing said claim.  This provision shall not be construed to require the Contractor to pursue any delay claim against the Owner or any other party.

SECTION 6.  CHANGES IN WORK.  Subcontractor shall make no changes in the work covered by this Agreement without written direction from the Contractor.  Subcontractor shall not be compensated for any change, which is made without such written direction.  No changes in the work covered by this Agreement shall exonerate any surety or any bond given in connection with this Agreement.

SECTION 7.  CLAIMS.  If any dispute shall arise between Contractor and Subcontractor regarding performance of the work, or any alleged change in the work, Subcontractor shall timely perform the disputed work and shall give written notice of a claim for additional work within ten (10) days after commencement of the disputed work.  Subcontractor's failure to give written notice within the ten (10) day period constitutes an agreement by Subcontractor that it will receive no extra compensation for the disputed work.

SECTION 8.  INSPECTION AND PROTECTION OF WORK.  Subcontractor shall make the work accessible at all reasonable times for inspection by the Contractor.  Subcontractor shall, at the first opportunity, inspect all material and equipment delivered to the job site by others to be used or incorporated in the Subcontractor's work and give prompt notice of any defect therein.  Subcontractor assumes full responsibility to protect the work done hereunder until final acceptance by the Architect, Owner and Contractor.

SECTION 9.  LABOR RELATIONS.  Subcontractor shall maintain labor relations policies in conformity with the directions of the Contractor and shall comply with all of the terms and conditions, including trust fund contributions, required by those labor agreements applicable to work performed under this Agreement to which the Contractor is bound.  The specific agreements to which the Contractor is bound are listed in Section 16.

SECTION 10.  TERMINATION.  (I) Should Subcontractor fail to rectify any contractual deficiencies, including failure to pay its creditors, within three (3) working days from receipt of Contractor's written notice, Contractor shall have the right to take whatever steps he deems necessary to correct said deficiencies and charge the cost thereof to Subcontractor, who shall be liable for the full cost of Contractor's corrective action, including reasonable overhead, profit and attorneys' fees. (II) Contractor may at any time and for any reason terminate Subcontractor's services hereunder at Contractor's convenience; in the event of termination for convenience, Subcontractor shall recover only the actual cost of work completed to the date of termination plus fifteen percent (15%) of the actual cost of the work for overhead and profit. Subcontractor shall not be entitled to any claim or lien against Contractor or Owner for any additional compensation or damages in the event of such termination.

SECTION 11.  INDEMNIFICATION.  To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner and Contractor and their agents and employees from claims, demands, causes of actions and liabilities of every kind and nature whatsoever arising out of or in connection with Subcontractor's operations performed under this Agreement.  This indemnification shall extend to claims occurring after this Agreement is terminated as well as while it is in force. The indemnity shall apply regardless of any acts and/or

Initial NS

passive negligent act or omission of Owner or Contractor, or their agents or employees, but Subcontractor shall not be obligated to indemnify any party for claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents or employees or THE SUBCONTRACTOR SHALL INDEMNIFY AND HOLD HARMLESS THE OWNER, CONTRACTOR, ENGINEER, ENGINEERS CONSULTANTS AND AGENTS AND EMPLOYEES OF ANY OF THEM FROM AND AGAINST ACTUAL DAMAGES, LOSSES AND EXPNESES, INCLUDING BUYT NOT LIMITED TO ATTORNEY'S FEES, ARISING OUT OF OR RESULTING FROM PERFORMANCE OF SUBCONTRACTORS WORK ONLY UNDER THIS SUBCONTRACT, PROVIDED THAT ANY SUCH CLAIM, DAMAGE, LOSS OR EXPENSE IS ATTRIBUTABLE TO BODILY INJURY, SICKNESS, DISEASE, OR INJURY TO OR DESTRUCTION OF TANGIBLE PROPERTY (OTHER THAN THE WORK ITSELF), BUT ONLY TO THE EXTENT CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF THE SUBCONTRACTOR. THE OBLIGATIONS SET FORTH HEIN DO NOT INCLUDE A DUTY TO DEFEND, PAY COSTS, FEES OR EXPENSES, OR INDEMNIFY IN AN AMOUNT, BEYOND THE PERCENTAGE OF SUBCONTRACTORS NEGLIGENCE, IF ANY, caused solely by the designs provided by such parties.  The indemnity set forth in this Section shall not be limited by insurance requirements or by any other provision of this Agreement.  All work covered by this Agreement done at the site or in preparing or delivering materials or equipment to the site shall be at the sole risk of Subcontractor until the completed work is accepted by Contractor.

SECTION 12.  INSURANCE.  Subcontractor shall, at its expense, procure and maintain insurance on all of its operations, with carriers acceptable to Contractor, and in amounts acceptable to Contractor and as required by the prime contract, including the following coverages:

     a.  Workers' Compensation and Employer's Liability insurance;
     b.  Comprehensive General Liability or Commercial General Liability insurance covering all operations; and
     c.  Automotive Liability insurance, including coverage for all owned, hired and non-owned automobiles.

All insurance coverage shall be in the amounts and for duration's acceptable to Contractor and as required by the prime contract. Subcontractor shall, when required by Contractor, name Contractor as an additional insured under the General Liability policy. Subcontractor shall provide certificates of insurance to Contractor. The certificates of insurance shall provide that there will be neither cancellation nor reduction of coverage without thirty- (30) days prior written notice to Contractor. The failure of Contractor to enforce in a timely manner any of the provisions of this Section 12 shall not act as a waiver to enforcement of any of these provisions at a later date in the performance of this Agreement.

SECTION 13.  CLAIMS RESOLUTION.  Any claims resolution procedure incorporated in the prime contract shall be deemed incorporated in this Agreement, and shall apply to any disputes arising hereunder.  In the absence of a claims resolution procedure in the prime contract, the parties hereto shall not be obligated to utilize arbitration or any other non-judicial method of dispute resolution. In any dispute resolution proceeding between the parties to this Subcontract, the prevailing party shall be entitled to recover its attorneys' fees.

SECTION 14.  WARRANTY.  Subcontractor warrants to Owner, Architect and Contractor that all materials and equipment furnished shall be new, free from faults and defects and of good quality. Subcontractor hereby warrants its work against all deficiencies and defects for the period required by the prime contract or the longest period permitted by the law of this State, whichever is less.

SECTION 15.  SPECIAL PROVISIONS:

     Subcontractor shall provide all labor, materials and equipment necessary to perform all line items listed per plans and specifications of this project. Contract documents include all plans, addendum and specifications issued for the purpose of bidding this project.  All references within the contract documents apply to this contract.
     This is a prevailing rate project and all Subcontractors agree to pay their employees the current prevailing rate and submit certified payroll to the Prime Contractor.
     ITL PROPOSAL DATED MARCH 9, 2017 IS INCORPORATED IN AND BECOMES PART OF THIS AGREEMENT.

SECTION 16.  LABOR AGREEMENTS.  The Contractor is signatory to the following labor agreements covering work on this project:

     This is a prevailing rate project and all subcontractors shall submit certified payroll to Prime Contractor.

CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS STATE LICENSE BOARD.  ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED TO THE REGISTRAR OF THE BOARD, WHOSE ADDRESS IS:

Contractors State License Board
Post Office Box 26000
Sacramento, Ca.  95826

Dated: April 25, 2017          Dated:

CONTRACTOR          SUBCONTRACTOR

Wood Bros., Inc.          International Lining Technology

By _____     By _____
                                        Name

PO Box 216          850 Maestro Drive Suite 101

2

Lemoore, CA 93245                         Reno, NV 89511


_____558257_____                 _____811377_____
Contractor's License No.               Contractor's License No.

Note: This document has important legal consequences.  Consultation with an attorney prior to execution of this document is encouraged.  Some construction prime contracts may
require the use of specialized provisions not include in his form.

3

 INTERNATIONAL
LINING TECHNOLOGY



# Quotation

Date: March 9, 2017

Attention: Estimator

Re: American Avenue Disposal Phase III Modules 7-8

International Lining Technology (ILT) appreciates the opportunity to submit the following bid for your consideration. We are quoting as a licensed contractor with the experience to perform the work as specified.

**Scope:** ILT will furnish material, labor and equipment for supply and installation of liner system components in accordance with applicable project specifications and manufacturer's standards and recommended test frequencies.

**Terms of Quotation:** This Quotation is expressly contingent upon the written acceptance of the terms and conditions attached hereto and are incorporated herein. The terms and conditions of this Quotation shall survive and become a part of any subsequent written agreement between the parties.  This pricing is valid for 30 days from the bid date and may be extended only upon written approval.

**Project Schedule:** This Quotation is exclusive of delays due to weather, lack of sub-grade or other factors beyond our control for completion of the liner installation. Schedule is 5 days per week 10 hours per day.

**Labor Determinations:** This project has been bid using current Fresno County Prevailing Wage Rates and include the increase scheduled for June 2017. If rates increase otherwise before the work is performed ILT reserves the right to adjust the pricing accordingly.  ILT personnel are non-union but is willing to sign a one-time site specific agreement. Additional costs are $9,500.00.

**Insurance:** ILT will procure and maintain insurance with coverage for (1) Workers Compensation and Employers Liability: (2) Comprehensive General Liability: and (3) Automobile Liability. Owner Insurance and Safety Compliance Programs administered by third parties will be subject to additional costs.

**Indemnity:** ILT will indemnify and hold harmless the Owner and General Contractor from claims of loss, damage, destruction of property or injury to persons that a rise from or is in connection with the work of ILT to the extent of ILT's negligence only.

**Invoice Terms:** ILT terms and conditions shall apply and take precedence to any and all agreements and contracts entered upon.

## Project: American Avenue Disposal Phase III Modules 7-8

### Items included:

This Quotation is based on the following Specifications, Drawings and Addendums:

1. Specifications: American Avenue Disposal Site Modules 7&8 Excavation and Liner System Construction (487 pages dated February 7, 2017). ILT will install materials to conform to industry standards which includes allowable leak rates. Conditions required beyond these specifications are subject to additional costs and must be addressed at the time of bid.
2. Drawings: Plans for Construction American Avenue Disposal Site Phase III Modules 7&8 Excavation and Liner System Construction (11 pages dated February 7, 2017).
3. Addendums: #1

Included within this Quotation are the following items:

1. Mobilization: Our quote is based on one mobilization. Any additional mobilizations will be per ILT Time and Material Rates.
2. Supply and Install Geosynthetics listed below.
3. Standard 2 year Install Warranty, Manufacturer's standard 20 year HDPE Material Warranty, and Manufacturer's standard Warranties on remaining materials.
4. Taxes included at 7.975%.

### Conditions of Quotation:

1. The subgrade to be lined is to be prepared and maintained by others during the construction project. The subgrade must be firm, dry and unyielding so as to permit the use of heavy equipment for the movement and deployment of geosynthetic materials. Reasonable access to be provided for the installation of materials. The General Contractor shall be responsible for protecting and maintaining the subgrade prior to and throughout all lining and all necessary dewatering. Installation of Geosynthetics over subgrade that does not meet conditions specified above will be re-estimated and reflected in a change to the agreement before installation proceeds. Acceptance of the subgrade for lining shall not alter this division of responsibility.
2. Delays caused by others will be charged standby time at the rate of $85.00 per man-hour. This charge is not as a direct labor cost reimbursement but is to compensate ILT for its increased mobilization expenses resulting from lost time.
3. Material prices are good for materials delivered within 30 days. ILT reserves the right to pass along verifiable resin price increases and fuel cost adjustments without change order as of the time of shipment for material delivered past 30 days. Material quantities specified in ILT Quotation and/or used in a Contract Agreement shall be paid in full with no exceptions unless agreed to in writing.
4. General Contractor to have suitable quantities of subgrade prepared to not delay or impede the installation of geosynthetics and schedule. Deficiencies in agreed upon and approved subgrade before daily installation shall incur a project specific premium which will be approved by Contractor through a signed field change order before installation proceeds.
5. Quotation is based on ILT crews working at level D hazardous conditions.
6. Any work outside the original scope shall be on ILT T&M rates unless agreed to in writing.
7. ILT will comply with any schedule provided in the bid from the General Contractor for this specific project and will use its best efforts to meet any requested revisions to that schedule. ILT will not be responsible for any consequential damages as a result of delay. Project delays beyond agreed upon bid schedule date shall provide ILT the option to re-estimate project for any cost increases.
8. Force Majeure: ILT shall not be responsible for any delays, losses, costs or damages resulting from acts or circumstances beyond its control, including, but not limited to, failure or bankruptcy of material suppliers, labor disputes, fires, floods, riots, hurricanes, tornadoes, tropical storms, rain, wind, Acts of God or the public enemy, or by any other act or event beyond ILT's control. Any and all costs, including attorney's fees, in the pursuit of claims awarded ILT shall be paid by Contractor.
9. This Quotation is based upon working in favorable conditions and completion of work within the time period agreed upon at bid. Work between November 1st through April 30th and at times of extended adverse conditions will be subject to a daily rate for installation of geosynthetics and standby specific to this project.

Page 3

## *Project: American Avenue Disposal Phase III Modules 7-8*

10. Bond rate is 1.15%. ILT CA Contractors #811377. ILT Ca DIR #1000003265.

11. The following items are to be supplied by others at no cost to ILT:

- A. Sanitary facilities, sand for sand bag ballast if required, and trash removal
- B. All required surveying
- C. Material off-loading and storage prior to ILT mobilization. Any material damaged during off-loading or storage shall be replaced at the unit cost set forth in this Quotation
- D. Material laydown area within 500 feet of work area
- E. Adequate light plants if ILT is to perform the work at night
- F. All costs associated with laboratory testing of the geosynthetics or seam samples
- G. Supply and installation of all plywood
- H. All costs associated with Leak Location Survey or Leak testing. If leaks are found that can be traced to ILT negligence we will perform the repairs. All other repairs will be made at time and material rates.

12. ILT does not provide SWPPP plans. If present, we will abide by the onsite SWPPP; all costs encountered will be paid by others.

**Project Pricing:** The pricing below includes the following work. Any additional work will be performed at time and material rates.

- 1,160 lf of extrusion weld to existing HDPE
- Two 10" Boots at Sump Risers
- Additional HDPE and GCL rubsheets at Risers per Details 3/6 and 2/10
- Additional layers of geosynthetics in Lysimeters per Drawings 9 and 10
- 640 lf of extrusion welding at Lysimeters

- Required Approved Subgrade Project Start: 390,000 sf.  Required Approved Daily Subgrade: 175,000 sf

| Bid Item | Scope of Work | Estimated Quantity | Unit | Unit Rate | Extended Price |
|---|---|---|---|---|---|
| 28 | Mobilization | 1 | EA | $ 5,600.00 | $ 5,600.00 |
| 16 | GCL | 1,540,000 | SF | $ 0.441 | $ 679,140.00 |
| 17 | 60 mil HDPE Geomembrane | 1,560,000 | SF | $ 0.458 | $ 714,480.00 |
| 18 | Geonet | 1,540,000 | SF | $ 0.293 | $ 451,220.00 |
| 19 | 10 oz Geotextile | 1,540,000 | SF | $ 0.172 | $ 264,880.00 |
| | | | | Total Price | $ 2,115,320.00 |

Dan Harrison
Estimator/Project Manager

24,326.18

 INTERNATIONAL
LINING TECHNOLOGY

Corporate Office
850 Maestro Dr. Suite 101, Reno, NV  89511
Ph 775-284-2929
Fax 775-284-2930

Accepted by: _____

Date: _____

## Terms and Conditions to International Lining Technology Quotation

The terms and conditions stated herein are in addition to and incorporated specifically into International Lining Technology's Quotation made herewith.

The International Lining Technology Quotation shall only be effective and enforceable upon written acceptance of all terms and conditions of this Quotation and upon said written acceptance shall be deemed a part of and incorporated in any subject contract entered into by and between International Technology and the party quoted and in the event of any conflict between the terms and conditions stated herein, and any other documents and agreements between either International Lining Technology and/or the quoted party and the owner or prime contractor, these terms and conditions shall control.

This Quotation and the contracts made pursuant hereto are between International Lining Technology and the party this Quotation is made to.

Terms:  Payment for all materials supplied by International Lining Technology is due in full from the contracting party unconditioned upon payment from the owner or other contracting party within thirty (30)days from the date of delivery by International Lining Technology.  Payment for all materials past due sixty (60) days of deliver shall accrue interest at the rate of 2% per month.

Installation and Labor:  Payments are due thirty (30) days from the date of invoice.  Interest shall accrue on any and all payments not made within sixty (60) days of the date of invoice at a rate of 2% per month. The contracting party shall be liable for all costs of collection on any past due sums, including but not limited to attorney's fees, arbitrator's fees, filing fees, and all other related costs. The material quantities specified in International Lining Technology Quotation and/or used in the contract agreement shall be paid in full, unless otherwise agreed in writing.  No reduction in the quantities specified shall be allowed after ordering of the material by International Lining Technology.

Any and all lien rights and collection remedies shall be governed by the jurisdiction of the state in which the project is located and any and all issues of law with regard to interpretation of the terms and conditions of this Quotation shall be governed by the laws of the State of Nevada.

Disclaimer of Warranties Expressed and Implied: All work done by International Lining Technology (ILT) herein shall be done according to the terms and specifications of this Contract. ILT specifically does not warrant the work of others and to the extent ILT has been contracted to correct, complete or repair the work of others and the affect and impact of that work on the work of ILT.

Upon acceptance by Engineer or Owner, as applicable upon the completion of the work of ILT, as called for here, the parties hereby explicitly agree that all work is accepted as is and all warranties, expressed or implied and implied warranties of merchantability and fitness for particular purpose are hereby waived and disclaimed by the parties hereto.

In no event shall ILT be liable for or responsible for the costs of uncovering any work called for herein as a part of any potential warranty claim, nor shall it be responsible for any consequential damages, lost profits or expenses as a result of any defect, fault in material or workmanship of the work of ILT. ILT's sole responsibility for any defect or fault in its work, and its work only, shall be to repair or replace defective work at its option for a period of one (1) year after completion of ILT's work as called for herein.

_____
Initial